**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

**MARCUS L. BAILEY,**

    **Petitioner,**

v.                                                        **Case No. 5:12-cv-260-Oc-35PRL**

**WARDEN, FCC COLEMEN—USP II,**

    **Respondent.**

_____/

**O R D E R**

This cause comes before the Court on the Petition for Writ of Habeas Corpus (Doc. 1) (the "Petition") filed by Marcus L. Bailey pursuant to 28 U.S.C. § 2241. Respondent filed a Response to Petition (Doc. 6), a Supplemental Response to Petition (Doc. 11), and a Second Supplemental Response to Petition (Doc. 15). Bailey filed a reply (Doc. 9) and a supplemental reply (Doc. 13) to the responses. Upon consideration of the Petition, the responses, and the replies, the Court concludes that the Petition lacks merit. Bailey alleges two grounds for relief, which are addressed below.

**I.  Procedural Background**

Bailey is a federal inmate currently confined at the Terre Haute Federal Correctional Institution, where he is serving a sentence of 60 months imposed by the United States District Court for the District of South Carolina for conspiracy to distribute and to possess with intent to distribute a quantity of cocaine. (Doc. 6-1, Exh. 1). According to the BOP, with earned and projected credits against his sentence, Bailey is scheduled to be released from federal custody on August 20, 2015. (*Id.*).

On December 29, 2006, Bailey was arrested by local authorities in Orangeburg County, South Carolina for possession of a controlled substance, failure to stop, stolen vehicle, giving false information, and possession of a weapon (the "Orangeburg County Case"). (Roush Decl., Doc. 6-1, ¶ 4).[1] On October 2, 2007, while in state custody, the United States District Court for the District of South Carolina issued a writ of habeas corpus *ad prosequendum* directed at Bailey, and the United States Marshal's Service delivered Bailey to that Court. (*Id*. at ¶ 5). On October 9, 2007, the charges in the Orangeburg County Case were *nolle prossed*. (*Id*. at ¶ 6.) However, Bailey remained under the custody of the State of South Carolina due to another pending state charge. (*Id*.).

On November 18, 2008, Bailey was sentenced in the United States District Court for the District of South Carolina to a term of 60 months, and, after sentencing, he was returned to state custody in South Carolina, with the federal Judgment and Commitment Order filed as a detainer. (*Id*. at ¶ 7; Doc. 1 at 34).

On February 26, 2009, Bailey was sentenced in Charleston County, South Carolina to a term of 5 years for strong armed robbery (the "Charleston County Case"). (*Id*. at ¶ 9). The state court determined that Bailey should receive credit against his state sentence for time previously spent in custody and that the state sentence should run concurrently with his federal sentence. (Doc. 6-1, Exh. 2, Attachment 6). The state court further directed that Bailey was to be "given over" to the custody of the United States Marshals Service. However, the State did not release Bailey to the United

---

[1] Respondents submitted the Declaration and Certification of Records of Andrew Roush (the "Roush Decl."), a Management Analyst at FCC-Coleman who reviewed records relevant to the imposition and administration of Bailey's sentence.

States Marshals Service to commence service of his federal sentence; instead, the State retained him in its custody. On March 10, 2011, Bailey completed his 5-year sentence and was released to Berkeley County, South Carolina on pending charges for state property offenses (the "Berkeley County Case"). (Roush Decl., Doc. 6-1, ¶ 10).

On April 11, 2011, Bailey was sentenced in the Berkeley County Case to a 90-day (time-served) term of confinement. (*Id.* at ¶ 11). On April 13, 2011, Bailey was released to federal custody to commence service of his federal sentence. (*Id.* at ¶ 12).

The Bureau of Prisons (the "BOP") is charged with computing the sentences of inmates in its custody, and the BOP prepared a sentence computation for Bailey, commencing his federal sentence on the date he was received into federal custody (April 13, 2011). (*Id.* at ¶ 13). Bailey received credit against his state sentences for all time spent in official federal detention prior to his release to federal custody, and the BOP determined that Bailey was only entitled to prior custody credit against his federal sentence for one day, April 12, 2011, which is the day between the completion of his state sentences and the date he commenced his federal sentence. (*Id.* at ¶ 18).

## II.     Legal Standards

An inmate may challenge the BOP's execution of his sentence in a § 2241 petition. *See, e.g., Byrd v. Hasty*, 142 F.3d 1395, 1397 (11th Cir.1998) (involving § 2241 petition challenging BOP's refusal to reduce inmate's sentence for successful completion of a treatment program); *see also Antonelli v. Warden*, 542 F.3d 1348, 1352 (11th Cir. 2008) (concluding a § 2241 petition is the proper vehicle to challenge the execution of a sentence, rather than the validity of the sentence itself).

"[P]risoners seeking habeas relief under § 2241 must nevertheless exhaust administrative remedies. Furthermore, where a habeas petition is brought pursuant to § 2241 the exhaustion of administrative remedies is jurisdictional." *Jaimes v. United States*, 168 F. App'x 356, 358 (11th Cir. 2006) (citation omitted).

### III.     Analysis

Bailey asserts two claims in the Petition. In claim one, Bailey argues as follows: (a) he did not receive "time credit [while he] was held in federal custody", which should have been computed "from 11-18-2008" (Doc. 1 at 6); and (b) his state and federal sentences should have run concurrently. (*Id.* at 7). In claim two, he argues that he "was not transferred into federal custody, like the Judge ruled on." (*Id.*).

**A.     Exhaustion of Administrative Remedies**

*1.     Procedural background.*

Respondent argues that Bailey did not properly exhaust his administrative remedies prior to filing the present case and that, therefore, this case should be dismissed.

Respondent submitted a Declaration and Certification of Records by Caixa Santos dated July 12, 2012 ("Santos Decl. I") and another one dated October 29, 2014 ("Santo Decl. II").[2] The record reveals that Bailey filed an administrative remedy request on August 22, 2011, at the institutional level, requesting credit for time spent in state custody. (Santos Decl. II, Doc. 11-1, ¶ 7). The request was informally resolved and

---

[2]Santos is a paralegal specialist at FCC-Coleman who reviewed Bailey's administrative requests. Santos Decl. I is found at Doc. 6-1, and Santos Decl. II is found at Doc. 11-1.

withdrawn on September 13, 2011. (*Id.*). Bailey did not appeal this request to the Regional Director or Central Office. (*Id.*).

Bailey filed a new administrative remedy request on March 1, 2012, at the institutional level, claiming his sentence calculation by the BOP was incorrect. (*Id.* at ¶ 8). The request was denied on March 2, 2012. (*Id.*). Respondent asserts that Bailey's appeal was rejected, but they failed to provide documentation regarding the appeal.

Bailey refiled his administrative request on April 27, 2012, and it was denied on June 1, 2012. (*Id.*). On July 5, 2012, Bailey appealed to the Central Office. Respondent asserts that Bailey's appeal was rejected, but they failed to provide documentation regarding the appeal.

On April 23, 2013, Bailey filed a new administrative remedy request at the institutional level, challenging his sentence computation. (*Id.* at ¶ 10). The request was denied as being repetitive of a previous filing. *Id.* Bailey appealed the denial to the Regional Director, who denied relief on May 21, 2013. (*Id.*). Bailey did not appeal this administrative remedy to the Central Office. (*Id.*).

On January 24, 2014, Bailey again filed an administrative remedy request at the institutional level, which was rejected as untimely. (*Id.* at ¶ 11).[3] Bailey was also informed that his administrative remedy request was repetitive of a previous filing. (*Id.*). Bailey appealed to the Regional Director, who denied the appeal as untimely. (*Id.*). Bailey then appealed to the Central Office, which also denied the appeal as untimely and for filing at the wrong office level. (*Id.*). The Central Office informed Bailey to

---

[3]The institution also informed Bailey that he had exhausted his administrative remedies. (Doc. 11-1, Attachment F).

obtain a staff memorandum providing the reasons for his untimely filing and to then resubmit his administrative remedy at the institutional level to the Warden. (*Id.*). However, Bailey failed to do so. (*Id.*).

Santos contends that, "[a]ccording to Bureau records, inmate Bailey has failed to exhaust his administrative remedies regarding his sentence calculation. Although he has filed several different remedies on this issue, he has not successfully completed the three level process." (*Id.* at ¶ 12).

### 2. Analysis.

Bailey argues that he has filed numerous administrative remedy requests and that he has fully exhausted his administrative remedies. (Doc. 9 at 2). Respondent argues that Bailey never completed the three-level appeal process (Warden, Regional Director, and General Counsel/Central Office). (Doc. 6 at 5). Petitioner raised claims 1(a) and 1(b) during the administrative remedy proceedings; however, he did not raise claim 2.

The exhaustion requirement was discussed by the Eleventh Circuit Court of Appeals in *Hicks v. Jordan*, 165 F. App'x 797, 798 (11th Cir. 2006):

> The Attorney General has the authority to determine what credit, if any, is due a prisoner for time served, and the Attorney General has delegated the right to make this determination to the BOP. *See Rodriguez v. Lamer*, 60 F.3d 745, 747 (11th Cir.1995); *United States v. Lucas*, 898 F.2d 1554, 1555-56 (11th Cir.1990) (*per curiam*). A prisoner seeking credit against his sentence for time in custody must exhaust BOP administrative remedies, or else the district court has no jurisdiction to hear his claims. *Lucas*, 898 F.2d at 1556. The BOP has established regulations governing formal review of inmate complaints relating to any aspect of imprisonment. *See id.*; 28 C.F.R. §§ 542.10-.19. These regulations "set out the procedures that prisoners must pursue prior to seeking relief in a district court." *Lucas*, 898 F.2d at 1556. The regulations include an appeals process that allows the BOP's General Counsel to make the ultimate decision. *See* 28 C.F.R. § 542.15(a).

Case 5:12-cv-00260-MSS-PRL   Document 16   Filed 04/15/15   Page 7 of 13 PageID 251

(Footnote omitted). The BOP's Administrative Remedy Program applies to all inmates confined in institutions operated by the BOP and is set forth in 28 C.F.R. § 542.10 *et seq.* The Administrative Remedy Program is a four-tiered review process:

> The BOP provides a four-level administrative grievance procedure for prisoner complaints. 28 C.F.R. § 542.10–542.19. Each of these steps is generally required to satisfy the exhaustion requirement. The prisoner must first seek resolution of his issue through an informal grievance. 28 C.F.R. § 542.13(a). If not satisfied with the response, the inmate may file a formal written complaint with the warden of his institution. *Id.* at § 542.14. The warden's response may be appealed to the Regional Director, 28 C.F.R. § 542.15(a). The Regional Director's response may be appealed to the General Counsel for the BOP. 28 C.F.R. § 542.15(a). The prisoner's appeal to the General Counsel must be submitted within 30 calendar days of the date the Regional Director signed his response. 28 C.F.R. § 542.15(a). A remedy request that does not meet program requirements may be rejected by an administrative remedy coordinator at any level and returned to the inmate. 28 C.F.R. § 542.17.

*Taylor v. U.S. Bureau of Prisons*, No. 5:10CV194/RS/CJK, 2012 WL 1549925, at *4 (N.D. Fla. Mar. 26, 2012); *see also Williams v. Rathman*, No. 1:12-CV-1112-VEH-JHE, 2014 WL 1618372, at *3 (N.D. Ala. Apr. 22, 2014) ("The three-tiered review process begins with the inmate filing a form that describes his complaint, as well as the requested remedy. This 'initial filing' is submitted at the institution where the inmate is confined. 28 C.F.R. § 542.14(c)(1), (4). The Warden then responds to the inmate's formal complaint. If dissatisfied with the Warden's response, the inmate may appeal to the Regional Director. 28 C.F.R. § 542.15(a). If dissatisfied with the response from the Regional Director, the inmate may appeal to the General Counsel. *Id.* Appeal to the General Counsel is the final administrative appeal under the BOP's Administrative Remedy Program. *Id.*").

In the present case, Bailey made repeated attempts to exhaust his administrative remedies with regard to claims 1(a) and 1(b). Bailey filed at least five administrative remedy requests at the institutional level, and in several instances he submitted appeals to the Regional Director and/or the Central Office. Clearly, Bailey made every effort possible to exhaust his administrative remedies. Although Respondent asserts that Bailey never fully completed the appellate process, they failed to provide full documentation relating to the appeals in 2012, and they have failed to meet their burden of demonstrating that Bailey failed to properly exhaust claims 1(a) and 1(b). Under the circumstances, the Court finds that Bailey exhausted his administrative remedies as to claims 1(a) and 1(b).

The Court finds that Bailey did not exhaust his administrative remedies as to claim 2, and it is denied.[4]

### B. Commencement of Bailey's Federal Sentence

In calculating a federal sentence, a term of imprisonment commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Thus, "[a] federal sentence does not commence until the Attorney General receives the defendant into her 'custody' for service of that sentence." *United States v. Evans*, 159 F.3d 908, 911 (4th Cir. 1998).

Upon the conclusion of the federal proceedings, Bailey was returned to the state correctional facility in South Carolina, where he remained until his release on April 13,

---

[4]Further, claim 2 should be raised in an appropriate action against the State of South Carolina. Claim 2 does not involve the execution of Bailey's sentence or the Respondent in this case

2011. On that date, he entered federal custody awaiting transportation to the official detention facility at which his federal sentence was to be served, and his federal sentence thereby commenced. Thus, Bailey's federal sentence commenced on April 13, 2011, the date he was received into exclusive custody for service of his federal sentence.[5]

### C.   Bailey Is Not Entitled to Prior Custody Credit (Claim 1(a))

In claim 1(a), Bailey argues that he did not receive credit for the time he was held in custody beginning on November 18, 2008, the date of his federal sentencing. (Doc. 1 at 6).

Bailey received credit from the state against his state sentence for the period he was incarcerated before he was sentenced on the state charges. Pursuant to 18 U.S.C. § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." Section 3585(b) governs jail credit and provides as follows:

> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or

---

[5] At the time the federal sentence was imposed, Bailey was in temporary federal custody pursuant to a writ of habeas corpus *ad prosequendum*. "[W]hen the federal government takes possession of a state prisoner pursuant to a writ of habeas corpus *ad prosequendum*, the state's custody is not interrupted, and thus the prisoner's federal sentence does not begin to run until he is turned over to federal authorities after having served his state sentence." *See Butler v. Warden, FCC Coleman-Medium*, 451 F. App'x 811, 812 (11th Cir. 2011).

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

*that has not been credited to another sentence.*

(Emphasis added).

All the time Bailey spent in custody prior to the commencement of his federal sentence was credited against his state sentences, with the exception of April 12, 2011. See Doc. 1 at 16. As a result, the BOP could not award that time as prior custody credit against his federal sentence. See 28 U.S.C. § 3585(b). Consequently, claim 1(a) is denied.

### C. The State Court's Recommendation Regarding Concurrent Sentences Is No Binding on the BOP (Claim 1(b))

Bailey argues in claim 1(b) that his federal and state court sentences should have run concurrently and that, as a result, he should have been given credit toward his federal sentence for the time he was incarcerated in the state correctional facility beginning on November 18, 2008.

When a federal defendant is already serving a state sentence, a district court is statutorily authorized to make the federal sentence run concurrently or consecutively with the un-discharged state sentence. See 18 U.S.C. § 3584(a). This statute is inapplicable to the instant case because Bailey was sentenced in federal court *before* he received his state sentence in the Charleston County Case.

Bailey's federal sentence was silent with regard to any future sentences. The state court's intention that the sentences run concurrently is not binding on the BOP or the federal courts. *Abdul-Malik v. Hawk*-Swayer, 403 F.3d 72, 75 (2d Cir. 2005). "[T]he state court's action raises the defendant's expectations but does not resolve the issue."

*Fegans v. United States*, 506 F.3d 1101, 1104 (8th Cir. 2007).  Thus, while the state court in the Charleston County Case was free to order his state sentence to run concurrently to any federal sentence Bailey was serving, this order had no bearing on the execution of Bailey's federal sentence.  Moreover, even though the state court ordered Bailey to be remitted to federal custody, the violation of that order by the state officials cannot be redressed in this habeas petition. Bailey's federal sentence, which preceded the state sentence, was silent as to whether it would run consecutively or concurrently to any future sentences.

Therefore, although the state court ordered the state sentence to run concurrently with Petitioner's federal sentence, the BOP is charged with carrying out the sentence that the federal court imposed, not the sentence the state court imposed.  The federal sentencing court did not order—at the time of sentencing or at any point subsequent to sentencing—that Petitioner serve his federal sentence concurrently with his state sentences. In fact, as discussed below, when asked by the BOP for an opinion regarding whether Petitioner should receive a retroactive concurrent designation, the federal sentencing court opposed the retroactive designation. Therefore, the BOP was not obligated to calculate Petitioner's federal sentence as concurrent with his state sentence, and claim 1(b) is denied.

**D.     Bailey Is Not Entitled to A Retroactive Designation to A State Facility**

Although not specifically argued by Bailey, the Court notes that, a prisoner may receive a retroactive designation of the state correctional facility for service of his

federal sentence, if the BOP decides to grant such a designation after considering the factors set forth in 18 U.S.C. § 3621(b).[6]

In the present case, the BOP, via a letter dated July 6, 2011, contacted Judge Margaret Seymour, the United States District Judge who sentenced Bailey. The BOP requested that Judge Seymour state her position regarding whether the BOP should designate the state institution for service of his federal sentence, thereby reducing the total amount of time Bailey would spend in custody. (Doc. 6-1 at 46-47). Judge Seymour responded by a letter dated August 10, 2011, and she stated that, based on her review of the file and evidence, "I oppose the retroactive designation." (*Id.* at 59). The BOP, after considering the relevant factors set forth in section 3621(b) and Judge Seymour's statement, denied the retroactive designation. (Doc. 6-1 at 61).

The record reveals that the BOP duly considered Petitioner's request, weighed the factors, and properly exercised its discretion under section 3261(b). Petitioner has failed to show that the BOP abused its discretion in denying the retroactive designation. Consequently, Bailey is not entitled to a retroactive designation to a state facility.[7]

Accordingly, the Petition (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Bailey and **CLOSE** this case.

---

[6]The BOP is required to consider the following factors under 18 U.S.C. § 3621(b): (1) resources of the facility contemplated; (2) nature and circumstances of the offense; (3) history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence; and (5) any pertinent policy statement issued by the Sentencing Commission.

[7]Bailey raises an ineffective assistance of trial counsel claim in his reply. However, his remedy for such a claim was to file a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence with the federal sentencing court within one year of the imposition of his sentence. 28 U.S.C. § 2255.

**DENIAL OF BOTH A
CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

**IT IS FURTHER ORDERED** that Bailey is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Bailey must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he cannot meet *Slack*'s prejudice requirement, Bailey is entitled to neither a certificate of appealability nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Bailey must pay the full appellate filing fee without installments unless the Circuit Court allows Bailey to proceed *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida this 15th day of April, 2015.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-2 4/15
Counsel of Record
Marcus L. Bailey